UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TREVOR BURNS,

                        Plaintiff,

v.                                                   9:05-CV-1204
                                                   (GLS/GHL)

SGT. W. TROMBLY, Correctional Officer, Upstate C.F.;
S. BROWN, Correctional Officer, Upstate C.F.;
T. QUINN, Correctional Officer, Upstate C.F.;
N. LAVIGNE, Correctional Officer, Upstate C.F.;
J. COLBY, Correctional Officer, Upstate C.F.;
C. CROSSMAN, Correctional Officer, Upstate C.F.;
SGT. JOHN DOE I, Correctional Officer, Upstate C.F.;
SGT. JOHN DOE II, Correctional Officer, Upstate C.F.;
LT. JOHN DOE I, Correctional Officer, Upstate C.F.;
LT. JOHN DOE II, Correctional Officer, Upstate C.F.;
J. McGRAW, Correctional Officer, Upstate C.F.;
E. RUSSELL, Correctional Officer, Upstate C.F.;
B. CLARK, Correctional Officer, Upstate C.F.;
G. WATERSON, Registered Nurse, Upstate C.F.;
J. CHESEBORO, Registered Nurse, Upstate C.F.;
CAPTAIN D. UHLER, Correctional Officer, Upstate C.F.;
DONALD WOOD, Correctional Officer, Upstate C.F.;
and ROBERT K. WOODS, Superintendent, Upstate C.F.,
                                    Defendants.

_____

APPEARANCES:                               OF COUNSEL:

TREVOR BURNS, 97-A-6087
  Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ANDREW M. CUOMO                MARIA MORAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This *pro se* prisoner civil rights action, brought pursuant to 42 U.S.C. § 1983, has been referred to the undersigned for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.  Generally, in this action, Trevor Burns ("Plaintiff"), an inmate at Attica Correctional Facility, alleges that, when he was incarcerated at Upstate Correctional Facility during October 2004, eighteen employees of the New York State Department of Correctional Services ("DOCS") violated his constitutional rights under the Eighth and Fourteenth Amendments when (1) they used excessive force during an attempt to move Plaintiff to a different prison cell, and (2) they were deliberately indifferent to Plaintiff's serious medical needs arising from that use of excessive force.  (*See generally* Dkt. No. 1.)

Currently pending before the Court is Defendants' motion for partial summary judgment, which seeks the dismissal of the following claims: (1) Plaintiff's claims against the four "John Doe" Defendants; (2) Plaintiffs claims against the remaining fourteen Defendants in their official capacities; (3) Plaintiff's Fourteenth Amendment claims against the remaining fourteen Defendants; and (4) Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities.  (Dkt. No. 58.)[1]  For the reasons set forth below,  I recommend that Defendants' motion for partial summary judgment be granted.

---

[1]    I note that Defendants expressly "concede" that "a trial is needed to resolve" (1) Plaintiff's Eighth Amendment excessive-force claims against Defendants Trombly, Brown, Lavigne, Colby, Crossman, McGraw, Russell, and Donald Wood, and (2) Plaintiff's Eighth Amendment deliberate-indifference claims against Defendants Waterson and Chesboro.  (Dkt. No. 58, Part 3, at 8 [Defs.' Memo. of Law].)

I.     **BACKGROUND**

A.     **Summary of Plaintiff's Complaint**

Liberally construed, Plaintiff's Complaint (Dkt. No. 1) alleges as follows.

On or about October 14, 2004, Defendant **Trombly** ordered Defendants **Brown** and **Donald Wood** to move Plaintiff from "10 . . . C Company 25 Cell to 10 . . . B Company 5 Cell by any means of force." (Dkt. No. 1, ¶ 6[4] [Plf.'s Compl.].) Defendants **Brown** and **Donald Wood** applied full restraints to Plaintiff. (*Id*. at ¶ 6[5].) Once the restraints had been secured, Defendants **Brown** and **Donald Wood** carried Plaintiff from one cell to the next–Defendant **Donald Wood** with a retention strap in one hand and Plaintiff's shirt in the other, and Defendant **Brown** with Plaintiff's shirt in one hand and Plaintiff's handcuffed wrists in the other. (*Id*. at ¶ 6[6].) Once they reached 10 B Company 5 Cell, Defendant **Trombly** became "extremely angry," and he and Defendant **Quinn** ordered Defendants **Lavigne** and **Colby** to dress in "riot gear [and] to use force on [Plaintiff]." (*Id*. at ¶¶ 6[7], 6[9].)

At that point, Plaintiff alleges the following uses of excessive force occurred on or about October 14, 2004:

1.     Defendant **Lavigne** attempted to "bang [Plaintiff's] head against the wall," and Defendants **Brown, Lavigne** and **Donald Wood** together succeeded in "forcefully bang[ing] [Plaintiff's] head against the wall with tremendous force." (*Id*. at ¶¶ 6[10]-6[11].)

2.     Defendants **Brown, Lavigne, Colby, Crossman** and **Donald Wood** "pulled [Plaintiff] from the wall and forcefully slamed [sic] [Plaintiff] to the floor . . . face first [,] with [Defendant] **Colby** grabbing [Plaintiff's] head [and] slaming [sic] it down to the ground with tremendous force." (*Id*. at ¶ 6[12].)

3.     Defendant **Colby** choked Plaintiff by placing his knee on Plaintiff's head and grabbing his neck.  (*Id*. at ¶ 6[13].)

4.     Defendants **Brown, Lavigne, Crossman** and **Donald Wood** "all forcefully pressed on top of [Plaintiff] causing [Plaintiff] to gasph [sic] for air and fall unconscious."  (*Id*. at ¶ 6[13].)

5.     Defendant **Brown** tightened Plaintiff's handcuffs "beyond full capacity," causing Plaintiff to "scream in pain and his hands to swell like boxing gloves."  (*Id*. at ¶ 6[14].)

6.     Upon Defendant **Trombly's** orders, Defendants **Colby, Crossman, Lavigne, Brown** and **Donald Wood** picked up Plaintiff and threw him into his new cell, which caused Plaintiff to hit his head on the side of his bed.  (*Id*. at ¶ 6[15].)

7.     Defendant **Trombly** ordered Defendants **Crossman** and **Donald Wood** to tie Plaintiff's arms and legs with a sheet and "push him under the bed."  (*Id*. at ¶ 6[16].)

8.     Plaintiff lost consciousness while Defendants **Sgt. John Doe 1, Sgt. John Doe 2, Lt. John Doe 1,** and **Lt. John Doe 2** watched him from the cell door.  (*Id*. at ¶ 6[17].)

9.     Defendants **Lavigne, McGraw, Crossman, Russell,** and **Trombly** took Plaintiff to the hospital, and as they were taking him back after he had been medically cleared, Plaintiff "felt numerous blows about the head, back, ribs and [felt a] final blow from a blunt object to the back of the head knocking [Plaintiff] unconscious again."  (*Id*. at ¶¶ 6[18]-6[21].)

10.    Upon Defendant **Trombly's** orders, Defendants **Lavigne, Crossman, Colby,** and **Brown** threw him into his cell face first while both his arms and legs were restrained.  (*Id*. at ¶ 6[24].)

11.    Defendant **Brown** slammed Plaintiff's head into the ground.  (*Id*. at ¶ 6[25].)

4

12.     Defendant **Trombly** again ordered **Defendant Donald Wood** to tie Plaintiff's hands and feet with sheets and push him under the bed.  (*Id*. at ¶ 6[26].)

13.     While **Defendant Burns** tied Plaintiff's hands and feet with sheets, **Defendants Lavigne** and **Brown** "applied tremendous presure [sic]" to Plaintiff's back and shoulders, "causing [him] to scream in pain."  (*Id*. at ¶ 6[27].)

After the actions outlined above took place, Plaintiff states he suffered "abrasions on both wrist [sic], ankles, face, and back, swelling about the cheeks eye's [sic], two massive knots on the back and side of the head, [and] sharp shocking pain in the back and head with a little blood from the mouth and nose."  (*Id*. ¶ 6[29].)  He states that he fell unconscious at approximately 11:00 a.m., drifting in and out of consciousness.  (*Id*. at ¶¶ 6[30]-6[31].)  At about that time, Defendant **Clark** took photographs of Plaintiff's injuries, and ignored his plea for medical assistance.  (*Id*. at ¶ 6[31].)

At or about 1:30 p.m., Plaintiff became unconscious again, and Defendant **Waterson** arrived at his cell for emergency sick call at or about 2:30 p.m.  (*Id*. at ¶¶ 6[32]-6[33].)  After explaining his symptoms and the nature of his injuries to Defendant **Waterson**, Plaintiff was informed by Defendant **Waterson** that "his condition [was] not an emergency" and "your [sic] a big guy you can handle it."  (*Id*. at ¶¶ 6[34]-6[36].)  On or about October 15, 2004, Plaintiff again requested emergency sick call after falling unconscious in his cell.  (*Id*. at ¶¶ 6[37]-6[38].)  After showing Defendant **Cheseboro** his injuries, Defendant **Cheseboro** refused to treat Plaintiff, stating that there was no emergency condition and that Plaintiff was abusing the sick call system. (*Id*. at ¶¶ 6[40]-6[42].)

On or about October 18, 2004, Plaintiff sent Defendant **Robert Woods** a letter requesting

5

an investigation of the above outlined events.  (*Id*. at ¶ 6[43].)  On or about October 21, 2004, Plaintiff received a letter from Defendant **Uhler**, stating that upon investigation, all staff members were found to have acted appropriately.  (*Id*. at ¶¶ 6[45]-6[46].)

    **B.**      **Summary of Defendants' Motion for Partial Summary Judgment**

In their motion, Defendants argue that the majority of claims asserted in Plaintiff's Complaint should be dismissed for four reasons.  (Dkt. No. 58, Part 3, at 3-9 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's claims against the four "John Doe" Defendants should be dismissed because those four Defendants have not yet been named by Plaintiff, or served with process, during the 120 days following the filing of the complaint, and Plaintiff has failed to show good cause excusing this failure.  (*Id*. at 1, note 1.)  Second, Defendants argue that Plaintiffs claims against the remaining fourteen Defendants in their official capacities should be dismissed because those state employees are protected from liability, for actions taken in their official capacities, under the Eleventh Amendment.  (*Id*. at 1.)  Third, Defendants argue that Plaintiff's Fourteenth Amendment claims against the remaining fourteen Defendants should be dismissed because there are no factual allegations, or evidence, establishing any violation of the Fourteenth Amendment (only factual allegations asserting a violation of the Eighth Amendment). (*Id*. at 7-8.)  Finally, Defendants argue that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities should be dismissed because Plaintiff has failed to adduce sufficient record evidence to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged. (*Id*. at 3-7.)

## II.      GOVERNING LEGAL STANDARDS

### A.      Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists,[2] the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[3]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[4] The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[5] Rather, "[a] dispute regarding a material fact is

---

[2]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[3]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[4]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[5]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also*

7

*genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

What this burden-shifting standard means when a plaintiff has failed to *properly* respond to a defendant's Rule 7.1 Statement of Material Facts is that the facts as set forth in that Rule 7.1 Statement will be accepted as true[7] to the extent that (1) those facts are supported by the evidence in the record,[8] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[9]

Implied in the above-stated standard is the fact that a district court has no duty to perform an *independent* review of the record to find proof of a factual dispute, even if the non-movant is proceeding *pro se*.[10]

_____

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[6]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[7]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") [emphasis in original].

[8]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted].

[9]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf*. N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[10]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a

In the event the district court chooses to conduct such an independent review of the record, any

affidavit submitted by the non-movant, in order to be sufficient to create a factual issue for

purposes of a summary judgment motion, must, among other things, not be conclusory.[11] (An

affidavit is conclusory if, for example, its assertions lack any supporting factual detail or are too

general.)[12] Moreover, the affidavit's assertions must be made on personal knowledge.[13] Finally,

---

district court to perform an independent review of the record to find proof of a factual dispute.")
[citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.
Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10,
2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006
U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for
summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003)
(Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d
369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[11]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson v. County of Oneida*, 375 F.3d 206,
219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in
an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97
(2d Cir. 1970) (stating that the purpose of Fed. R. Civ. P. 56[e] is to "prevent the exchange of
affidavits on a motion for summary judgment from degenerating into mere elaboration of
conclusory pleadings").

[12]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Fed. R. Civ. P. 56[e]); *Applegate*,
425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and
plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a
trial.").

[13]     Fed. R. Civ. P. 56(c) ("Supporting . . . affidavits shall be made on personal
knowledge, shall set forth such facts as would be admissible in evidence, and shall show

even where an affidavit is nonconclusory and is made on personal knowledge, it may be

insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct

evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror

would undertake the suspension of disbelief necessary to credit the allegations made in the

complaint."[14]

---

affirmatively that the affiant is competent to testify to the matters stated therein.").

[14]      *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit Local Rule § 0.23).

**B.      Recently Clarified Legal Standard for Motions to Dismiss**

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the plaintiff's complaint,[15] such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[16]

For these reasons, it is appropriate to briefly summarize the recently revised legal standard governing Rule 12(b)(6) motions to dismiss.  Under Fed. R. Civ. P. 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to

---

[15]      (*See*, *e.g.*, Dkt. No. 58, Part 3, at 3, 8 [Defs.' Mem. of Law, arguing, *inter alia*, that Plaintiff's official-capacity claims, and his Fourteenth Amendment claim, should be dismissed for failure to state a claim upon which relief might be granted].)

[16]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b).

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  It has long been

understood that a defendant may base such a motion on either or both of two grounds: (1) a

challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[17] or (2) a challenge to

the legal cognizability of the claim.[18]

 Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

---

[17] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[18] *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."[19] The purpose of this rule is to "facilitate a proper decision on the merits."[20] A complaint

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to assess the

sufficiency of [plaintiff's] claims."[21]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ.

P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[22] However, it is well established that even this

liberal notice pleading standard "has its limits."[23] As a result, several Supreme Court decisions,

and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice

---

[19]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[20]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[21]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[22]     *See, e.g., Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[23]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

pleading standard.[24]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim

upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[25]  Rather than turning

on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the

"plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a

plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to

---

[24]        *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007)
(pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125
S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings,*
*Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-
209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the
Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park*
*Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)
(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule
8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the
U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued
precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[25]        The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

The Second Circuit has repeatedly recognized the controlling nature of the clarified plausibility standard that was articulated by the Supreme Court in *Twombly*. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original]; *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("We affirm the district court's dismissal of the conspiracy claims because plaintiffs are unable to allege facts that would provide 'plausible grounds to infer an agreement' [under *Bell Atlantic v. Twombly*]"); *cf. Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) ("*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted].[26]

---

[26]   I note that, since the Supreme Court handed down *Twombly* in May of 2007, I have occasionally read language in Summary Orders issued by the Second Circuit, continuing to cite the now "retired" statement originating in *Conley v. Gibson*. *See Abuhouran v. Lans*, No. 06-2857, 2008 U.S. App. LEXIS 5696, at *2 (2d Cir. March 18, 2008) [citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999), which cites *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), which cites *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)]; *accord*, *Faconti v. Potter*, 242 Fed. App'x 775, 777 (2d Cir. Sept. 25, 2007) [citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), which cites *Ad-Hoc Comm. of Baruch Alumni Ass'n v. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987), which cites *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)];

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal

under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint

as true and construe all reasonable inferences in the plaintiff's favor."[27]  "This standard is applied

with even greater force where the plaintiff alleges civil rights violations or where the complaint is

submitted *pro se*."[28]  In other words, while all pleadings are to be construed liberally, *pro se* civil

rights pleadings are to be construed with an *extra* degree of liberality.  For example, the mandate

to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's

papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of

the plaintiff's complaint, to the extent that those factual assertions are consistent with the

allegations of the plaintiff's complaint.[29]  Moreover, "courts must construe *pro se* pleadings

---

*Douek v. U.S. Dept. of Educ.*, 231 Fed. App'x 100, 102 (2d Cir. Aug. 16, 2007) [citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999), which quotes *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)].  When I read that language in a Summary Order, I am reminded of what Chief Judge Alex Kozinski, of the United States Court of Appeals for the Ninth Circuit, has stated about unpublished decisions: "Unpublished dispositions--unlike opinions--are often drafted entirely by law clerks and staff attorneys. . . .  There is simply no time or opportunity to fine-tune the language of the disposition. . . . [T]he people making the sausage [are] tell[ing] you it's not safe for human consumption . . . . ."  Tony Mauro, "Difference of Opinion," *Legal Times*, at 10 (Apr. 12, 2004) (reporting interview of Judge Kozinski); *accord*, Letter from Alex Kozinski, Circuit Judge, U.S. Court of Appeals for the Ninth Circuit, to Samuel A. Alito, Jr., Chair, Advisory Comm. on Appellate Rule 4, at 2 (Jan. 16, 2004), available at http://www.nonpublication.com/ kozinskiletter.pdf ("[T]he people making the sausage [are] tell[ing] you it's not safe for human consumption . . . .").

[27]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[28]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[29]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants

broadly, and interpret them to raise the strongest arguments that they suggest."[30]  Furthermore,

when addressing a *pro se* complaint, generally a district court "should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated."[31]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended."[32]  For example, an opportunity to amend should be denied where "the

_____

generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to
consider materials outside the complaint to the extent they 'are consistent with the allegations in
the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering
factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part
on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on
case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a
matter of right, to amend his complaint once at any time before the service of a responsive
pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39
(2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to
dismiss) [citations omitted].

[30]    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

[31]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and
citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").

[32]    *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y.
1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y.
Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*,
04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-
recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307
(W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3
(S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y.
Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v.*

problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[33]

## III.    ANALYSIS

### A.    Claims Against Four "John Doe" Defendants

In his Opposition Memorandum of Law, Plaintiff does not respond to Defendants' argument that Plaintiff's claims against the four "John Doe" Defendants should be dismissed because those four Defendants have not yet been named or served by Plaintiff.  (Dkt. No. 60, Part 2 [Plf.'s Opp. Memo. of Law].)

Under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."  N.D.N.Y. L.R. 7.1(b)(3).  Because Plaintiff has failed to oppose that portion of Defendants' motion requesting dismissal of Plaintiff's claims against the four "John Doe" Defendants, Plaintiff has "consented" to that motion under Local Rule 7.1(b)(3).  Because Plaintiff has "consented" to that portion of

_____

*Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[33]       *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

Defendants' motion, the only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to the relief requested" through that argument. This burden has appropriately been characterized as "modest."[34] This is because, as a practical matter, the burden requires only that Defendants present an argument that is "facially meritorious."[35] Here, I find that Defendants' argument is, at the very least, facially meritorious.

On September 23, 2005, Plaintiff filed his Complaint in this action. (Dkt. No. 1.) On December 1, 2005, the Court issued an Order directing Plaintiff, *inter alia*, to "comply with any

---

[34]     *See, e.g., Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *see also Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[35]     *See, e.g., Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord, Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

requests by the Clerk's Office for any documents that are necessary to maintain this action."
(Dkt. No. 6, at 6 [Order of District Judge Gary L. Sharpe.)  On December 20, 2005, the Clerk's
Office notified Plaintiff that he must submit completed "USM 285 [F]orms" for each of the
Defendants in order for the U.S. Marshals Service to be able to effect service of process on those
Defendants.  (Dkt. No. 8.)  On March 23, 2006, Plaintiff was reminded of this duty.  (Dkt. No.
12.)

During the nearly two years that have followed since the issuance of that reminder,
Plaintiff has been given an adequate opportunity to conduct discovery in this matter.  For
example, on October 11, 2006, the Court filed a Scheduling Order, permitting a six-month period
of time in which to conduct discovery in this action.  (Dkt. No. 37.)  On April 27, 2007, the Court
extended that discovery period by two months.  (Dkt. No. 54.)  Indeed, on June 22, 2007, the
Court granted in part Plaintiff's motion to compel discovery.  (Dkt. No. 57.)  However, despite
these facts, as of the date of this Report-Recommendation, Plaintiff has failed to identify, and
submit USM 285 Forms permitting service of process on, the four "John Doe" Defendants in this
action.

For all of these reasons, I recommend that Plaintiff's claims against the four "John Doe"
Defendants be dismissed without prejudice due to Plaintiff's failure to name or serve those four
Defendants.

### B.     Claims Against Defendants in Their Official Capacities

In response to Defendants' argument that Plaintiffs claims against the remaining fourteen
Defendants in their official capacities should be dismissed under the Eleventh Amendment,
Plaintiff states that he "withdraws any claim against all defendants in their official capacities

. . . ."  (Dkt. No. 60, Part 2, at 1, 9, n.1 [Plf.'s Opp. Memo. of Law].)

For a variety of reasons, Plaintiff is not able, at this late stage in the litigation, to file a notice of voluntary dismissal without prejudice of his selected claims against all Defendants in their official capacities.  For example, Fed. R. Civ. P. 41 regards dismissals of "actions," not "claims."  *See* Fed. R. Civ. P. 41(a)(1)(i).  In addition, because both an Answer and a motion for summary judgment have been filed (Dkt. Nos. 35, 38, 53, 58), a voluntary dismissal of this action may be effected only through a Stipulation of Dismissal signed by all the parties to the action, or a Court Order.  *See* Fed. R. Civ. P. 41(a)(1)(i),(2).  I would not issue such an Order since, if Plaintiff were permitted to voluntarily dismiss his official-capacity claims without prejudice, he would be permitted to assert them (albeit in vain) later in another action.

However, Plaintiff's statement in footnote 1 of his Opposition Memorandum of Law is effectively a notice that he is consenting to Defendants' request for dismissal with prejudice of his official-capacity claims.  As explained above in Part III.A. of this Report-Recommendation, because Plaintiff has "consented" to that portion of Defendants' motion under Local Rule 7.1(b)(3), the only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to the relief requested" through that argument.  I find that they have done so, for the reasons articulated in their Memorandum of Law.  (Dkt. No. 58, Part 3, at 3 [Defs.' Mem. of Law].)

For all of these reasons, I recommend that Plaintiff's official-capacity claims be dismissed *with prejudice* because of the Eleventh Amendment.

C.      **Fourteenth Amendment Claims**

In response to Defendants' argument that Plaintiff's Fourteenth Amendment claims

against the remaining fourteen Defendants should be dismissed for failure to establish a

Fourteenth Amendment violation, Plaintiff states that he "withdraws any claim against all

defendants . . . under the Fourteenth Amendment."  (Dkt. No. 60, Part 2, at 1, 9, n.2 [Plf.'s Opp.

Memo. of Law].)

For the same reasons as articulated above in Part III.B. of this Report-Recommendation, I

find that Plaintiff may not, at this late stage in the litigation, voluntarily dismiss without

prejudice his Fourteenth Amendment claims against Defendants.  However, again, Plaintiff's

statement in footnote 1 of his Opposition Memorandum of Law is effectively a notice that he is

consenting to Defendants' request for dismissal with prejudice of his Fourteenth Amendment

claims.  As explained above in Part III.A. of this Report-Recommendation, because Plaintiff has

"consented" to that portion of Defendants' motion under Local Rule 7.1(b)(3), the only remaining

issue is whether Defendants have met their burden "to demonstrate entitlement to the relief

requested" through that argument.  I find that they have done so, for the reasons articulated in

their Memorandum of Law.  (Dkt. No. 58, Part 3, at 7-8 [Defs.' Mem. of Law].)

In particular, I note that Plaintiff points to no record evidence establishing a procedural

due process violation, substantive due process violation, or equal protection violation, arising

from the events alleged in his Complaint.  (*See generally* Dkt. Nos. 1, 60.)  Moreover, I note that

the Supreme Court has repeatedly held that, "if a constitutional claim is covered by a specific

constitutional provision . . . Amendment, the claim must be analyzed under the standard

appropriate to that specific provision, not under the [more generalized notion] of substantive due

process." *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 392-94 [1989]).[36]  Here, the constitutional claims asserted by Plaintiff are covered by the Eighth Amendment.  Therefore, those claims must be analyzed under the Eighth Amendment, and not the more generalized notion of substantive due process under the Fourteenth Amendment.

For all of these reasons, I recommend that Plaintiff's Fourteenth Amendment claims be dismissed *with prejudice* for failure to adduce sufficient record evidence to establish a violation of the Fourteenth Amendment.

### D.   Eighth Amendment Claims Against Quinn, Clark, Uhler and Robert Woods

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[37]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[38]  If the defendant is a supervisory official, such as a correctional facility superintendent or a facility health services director, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her

---

[36]     *See also Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (offering similar recitation of law before refusing to analyze claim of improper search under Fourteenth Amendment); *accord*, *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000).

[37]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[38]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

personal involvement in that unlawful conduct.[39]  In other words, supervisory officials may not be held liable merely because they held a position of authority.[40]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[41]

In response to Defendants' argument that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities should be dismissed because Plaintiff has failed to adduce sufficient record evidence to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged, Plaintiff argues that, in light of the special status he enjoys as a *pro se* litigant, the record should be construed as containing evidence sufficient to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged.  (Dkt. No. 60, Part 2, at 3-4 [Plf.'s Opp. Memo. of Law].)

---

[39]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[40]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[41]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

24

### 1.    Defendant Quinn

With regard to Defendant Quinn, Plaintiff argues that Defendant Quinn was personally

involved in the constitutional violations alleged by ordering Defendant Lavigne to dress in riot

gear and use force against Plaintiff.  (*Id*. at 4-5.)  As evidence that Defendant Quinn issued such

an order, Plaintiff points to only two portions of the record: (1) his sworn assertion on the matter,

which is contained at Paragraph "6(9)" of his Verified Complaint; and (2) the "Use of Force

Report" regarding the incident in question, attached to Defendants' motion papers (*see* Dkt. No.

58, Part 5, at 3-6 [Ex. B-1 to Moran Decl.]).

Paragraph "6(9)" of Plaintiff's Verified Complaint does not constitute sufficient evidence

to create a genuine issue of material fact with regard to Defendant Quinn's personal involvement

in the constitutional violations alleged because the assertion contained in that paragraph is not

factually specific in any regard, nor does it indicate that Plaintiff possessed any personal

knowledge of the source of the order in question; rather, the assertion is wholly conclusory in

nature and based on mere speculation and conjecture.  (*See* Dkt. No. 1, ¶ 6[9] [Plf.'s Compl.,

alleging that "Sgt./Lt. Quinn and Sgt. W. Trombly ordered C.O. N. Lavigne and C.O. Colby in

riot gear to use force on Burns."].)  *See also*, supra, notes 11-13 to this Report-Recommendation.

I note that, in his deposition, Plaintiff acknowledged that he possessed no personal knowledge of

the issuance of any such order (such as his overhearing it), but that his assertion that such an

order was issued is based solely on "reports" he had read.  (Dkt. No. 58, Part 5, at 27-28 [Ex. B to

Moran Decl., attaching pages 56 and 57 of Plf.'s deposition transcript].)

Plaintiff's argument that the "Use of Force Report clearly indicates that defendant Lavigne

was ordered by Sgt. Lt. Quinn to use force on plaintiff" is simply incorrect.  (Dkt. No. 60, Part 2,

25

at 5 [Plf.'s Opp. Memo. of Law].)  The "Use of Force Report," and the documents accompanying it, contain no such indication, no matter how much special solicitude is afforded to Plaintiff. (*See* Dkt. No. 58, Part 5, at 3-19 [Exs. B-1 through B-17 to Moran Decl.].)  In particular, I note that Defendants have adduced evidence that it was Defendant Trombly (and not Defendant Quinn) who issued the order to use force against Plaintiff.  (*See* Dkt. No. 58, Part 5, at 6, 9 [Exs. B-4 and B-7 to Moran Decl.].)

Even though the Court has no duty to conduct an independent review of the record to find proof of a factual dispute (*see*, *supra*, note 10 of this Report-Recommendation), I have, out of special solicitude to Plaintiff, reviewed the documents provided by him in opposition to Defendants' motion, and I note that they contain a memorandum dated October 14, 2004, from Defendant Lavigne to Defendant Trombly, stating, in pertinent part, that "[o]n 10/14/04 at approximately 10:15 A.M., I officer N. Lavigne reported to 10 building B-Gallery per direction of Sergeant Quinn to assist the officers with an unruly inmate to be placed inside 10-B-5 cell." (Dkt. No. 60, Part 1, at 18 [Ex. C to Plf.'s Decl. in Opp.].)  This document does *not* create a genuine issue of material fact with regard to Defendant Quinn's personal involvement in the constitutional violations alleged for two independent reasons.  First, the memorandum says nothing whatsoever about Defendant Quinn ordering Defendant Lavigne to use force against Plaintiff (as opposed to ordering him to assist other correctional officers, verbally persuade Plaintiff to enter his cell, and/or contribute to a *showing* of force to persuade Plaintiff to enter his cell).  Indeed, to the contrary, the memorandum states it was a superior officer *present at the*

*scene* (which Defendant Quinn was not, according to the available record evidence)[42] who

directed that Defendant Lavigne use force against Plaintiff to place him in his cell.  (*Id.* [stating

"we were instructed [by a superior officer present at the scene] to place inmate Burns inside 10-

B-5 cell . . . ."].)  Second, even if the memorandum had indicated that Defendant Quinn had

directed Defendants Lavigne and Colby to "use force," there is a critical distinction between an

order to "use force" and an order to "use excessive force."

Plaintiff's theory of liability against Defendant Quinn, which is premised merely on the

fact that Quinn was a supervisor, is revealed when Plaintiff argues that Quinn was personally

involved in the constitutional violations alleged because he "was supervising defendants

Trombly, Wood, Brown, Colby, Clark, Russell, McGraw, Lavigne and Crossman during the

incident."  (Dkt. No. 60, Part 2, at 5-6 [Plf.'s Opp. Memo. of Law].)  There is no record evidence

that Defendant Quinn was present at the scene issuing orders to the referenced Defendants.

Indeed, the undisputed record evidence is that Defendant Quinn was not present at the scene.[43]

The mere fact that, during the incident, Defendant Quinn was somewhere else in the prison

serving in a position of authority over the referenced Defendants is precisely the sort of liability

that is precluded under 42 U.S.C. § 1983, which requires something more than an officer's

position as a supervisor for him to be liable for a constitutional violation.

---

[42]        (*See*, *e.g.*, Dkt. No. 58, Part 5, at 27-28 [Ex. B to Moran Decl., attaching pages 56 and 57 of Plf.'s deposition transcript, stating "Q.  Okay.  And did you actually see Sergeant or Lieutenant Quinn there?  A.  No. . . .  Q.  So his name is based solely on some reports you read?  A.  Yeah. Q.  You never actually saw him there?  A.  No."].)

[43]        (*Id.*)

### 2.     Defendant Clark

With regard to Defendant Clark, Plaintiff argues that Defendant Clark was personally involved not in the (alleged) use of excessive force against Plaintiff but in the (alleged) failure to provide him adequate medical care following the use of that force.  (Dkt. No. 60, Part 2, at 6-7 [Plf.'s Opp. Memo. of Law].)  In particular, Plaintiff alleges that Defendant Clarke was personally involved in the deliberate indifference to his serious medical needs by refusing to cause Plaintiff to be transported to the prison's medical clinic immediately after the incident despite witnessing Plaintiff's (1) unconsciousness, (2) seizure, (3) facial swelling, and (4) request for medical treatment.  (Dkt. No. 60, Part 2, at 6-7 [Plf.'s Opp. Memo. of Law].)

As evidence in support of this argument, Plaintiff points to three portions of the record: (1) a memorandum dated November 2, 2004, from Lt. R. Emery to Capt. Bezio regarding the incident, which states that Defendant Clark operated the video camera that videotaped the incident (Dkt. No. 60, Part 1, at 14 [Ex. "B(1)" to Plf.'s Decl. in Opp.]); (2) his sworn assertion in his Verified Complaint that, at or about 11:10 a.m. on October 14, 2004, while Defendant Clark was taking photographs of Plaintiff for purposes of the Use of Force Report, Plaintiff pled with Clark to take him to the prison's medical clinic (*see* Dkt. No. 1, ¶ 6[31]); and (3) a "Film Roll Card" dated October 14, 2004, which shows that Defendant Clark took Plaintiff's photograph "while he lay on the cell floor . . . after [sustaining] a serious injury" (Dkt. No. 60, Part 1, at 19-20 [Exs. "C(1)" and "C(2)" to Plf.'s Decl. in Opp.]; *see also* Dkt. No. 58, Part 5, at 21-22 [Exs. A-19 and A-20 to Moran Decl.]).  Again, this evidence does not constitute sufficient evidence to create a genuine issue of material fact with regard to Defendant Clark's personal involvement in the alleged deliberate indifference to Plaintiff's serious medical needs.

The fact that Defendant Clark videotaped the incident in no way constitutes evidence that he was deliberately indifferent to any serious medical needs during the incident, which occurred between 10:15 a.m. and 11:00 a.m., according to Plaintiff's allegations.  (Dkt. No. 1, ¶¶ 6[4]-6[30] [Plf.'s Compl.].)  Plaintiff does not allege that he asked Defendant Clark for medical care during the occurrence of the incident.  (*Id.*)  Furthermore, even if he had asked for such medical care, the evidence shows he was provided medical care, when he was brought to the prison's medical clinic, where he was examined by a physician.  (Dkt. No. 1, ¶¶ 6[18]-6[20] [Plf.'s Compl.].)

Plaintiff first asked Defendant Clark for medical care after the incident was over, specifically, at or around 11:10 a.m.  (Dkt. No. 1, ¶ 6[31] [Plf.'s Compl.].)  The undisputed record evidence is that (1) Plaintiff did not explain to Defendant Clark *why* he needed to go to the medical clinic, (2) Defendant Clark in no way indicated to Plaintiff that he had heard Plaintiff's request, and (3) at the time that Plaintiff made his request, Plaintiff was on the cell floor and Defendant Clark was behind the cell door's closed window.[44]

In response to Defendants' argument that no record evidence exists establishing that Defendant Clark heard Plaintiff's request, Plaintiff essentially argues that Defendant Clark nonetheless *should have known* that Plaintiff needed to go to the medical clinic based on what

---

[44]        (Dkt. No. 58, Part 5, at 25-27 [Ex. B to Moran Decl., attaching pages 54-56 of Plf.'s deposition transcript, stating "Q.  Did [Defendant Clark] announce that he was there [at your cell]?  A.  Yeah.  He knocked on the window. . . . – the cell door window . . . .  Q.  Okay.  And what did he say to you?  A.  He didn't say anything.  Q.  He just knocked?  A.  Yeah. . . .  Q.  Okay.  So after he knocked what happened?  A.  I told him I needed to go to [the] clinic, and he just put a camera up and took the picture and left..  Q.  Okay.  Did you say why you needed to go to the clinic?  A.  No.  I didn't explain that to him.  Q.  Okay.  So instead he just took a photo and he didn't say anything back to you?  A.  No.  He didn't say anything.  Q.  Okay.  How did you – are you sure he even heard what you said.  A.  No.  I'm not sure . . . ."].)

Defendant Clark had seen happen to Plaintiff, specifically, Plaintiff's (1) loss of consciousness, (2) seizure, and (3) facial swelling.

As for the loss of consciousness and/or seizure that Plaintiff allegedly experienced *before* 11:10 a.m.–i.e., at some point between 10:15 a.m. and 11:00 a.m.–the undisputed record evidence is that Defendant was examined by a physician (Dr. Wiesman) rather promptly after that loss of consciousness and/or seizure, at which time no injuries were noted in his medical records.  (*See* Dkt. No. 58, Part 5, at 5, 9-17 [Exs. A-2 through A-3, and A-7 through A-15, to Moran Decl.]; Dkt. No. 1, ¶¶ 6[18]-6[20] [Plf.'s Compl.].)

As for the loss of consciousness and/or facial swelling that Plaintiff allegedly experienced *at* 11:10 a.m., no record evidence exists that Defendant Clark witnessed any loss of consciousness or facial swelling while standing outside Plaintiff's cell door at 11:10 a.m.  For example, the photograph provided by Plaintiff (which was taken by Defendant Clark at 11:10 a.m.) indicates absolutely nothing of these things.[45]  Even if the photograph indicated facial swelling, no evidence (or allegation) exists that Defendant Clark is a medical care professional trained or able to identify a prisoner's need for medical care based on seeing facial swelling through a cell door window.  As for Plaintiff's alleged unconsciousness at 11:10 a.m. (when Defendant Clark was standing outside Plaintiff's cell door), Plaintiff's deposition testimony indicates that he was conscious (e.g., capable of sight, hearing, and speech) when Defendant Clark knocked on his cell door and then took a photograph of Plaintiff at 11:10 a.m.[46]

---

[45]     (*See* Dkt. No. 60, Part 1, at 19 [Ex. "C(1)" to Plf.'s Decl. in Opp.]; *see also* Dkt. No. 58, Part 5, at 22 [Ex. A-20 to Moran Decl.]

[46]     *See*, *supra*, note 38 of this Report-Recommendation.

30

Finally, and more importantly, the undisputed record evidence indicates that, in fact, Plaintiff's cell was visited by Defendant Waterson (a registered nurse) at 11:10 a.m. on October 14, 2004. (Dkt. No. (Dkt. No. 58, Part 5, at 7-8 [Exs. A-5 and A-6 to Moran Decl., attaching Addendum to Use of Force Report, reporting on physical examination conducted by G. Waterson, RN, on 10/14/04, at 11:10 a.m.].)  It is inconceivable to me how a rational fact-finder could possibly hold Defendant Clark (a non-medical professional) liable for not causing Plaintiff to be brought to the prison's medical clinic at 11:10 a.m. on October 14, 2004, when, at that very time, Plaintiff was being examined by a medical professional.  The Eighth Amendment simply does not impose a duty on a correctional officer to second-guess (and, indeed, ignore) the medical judgment of a prison medical care professional, under such circumstances (if ever).

### 3.    Defendants Uhler and Robert Woods

With regard to Defendants Uhler and Robert Woods, Plaintiff's theory of personal involvement by these two Defendants is based "entirely upon the October 18, 2004, complaint sent to defendant Supt. Woods, [which] was investigated and responded to by defendant Uhler." (Dkt. No. 60, Part 2, at 8 [Plf.'s Opp. Memo. of Law].)  That "complaint," a handwritten letter filling only half a page, is attached as Exhibit A to Plaintiff's Declaration in Opposition to Defendants' motion.  (Dkt. No. 60, Part 1, at 10 [Ex. A to Plf.'s Decl. in Opp.].)  The written response sent to Plaintiff by Defendant Uhler is attached at Exhibit "A(1)" to Plaintiff's Declaration in Opposition to Defendants' motion.  (Dkt. No. 60, Part 1, at 11 [Ex. A-1 to Plf.'s Decl. in Opp.].)  Simply stated, these two documents do not constitute sufficient evidence to create a genuine issue of material fact as to whether these two Defendants were personally involved in the constitutional violations alleged.

31

Generally, given the facts of this case and the legal arguments advanced by Plaintiff, Plaintiff must adduce evidence in support of one or both of two facts–notice of a constitutional violation and/or a reckless disregard of a constitutional violation–in order to show the personal involvement of these two supervisory officials, under the legal standard recited above.  He has failed to adduce such evidence.

Plaintiff's letter was too brief and conclusory to place the two Defendants on notice that any constitutional violation had actually occurred.  Moreover, their response was adequate and in no way demonstrative of any recklessness on their part.  Defendant Woods (a high-ranking official at Upstate C.F.) had a right to refer Plaintiff's complaint to his subordinate officer, Defendant Uhler, for investigation and report, and to rely on that investigation and report.  *See Shabazz v. Lee*, 03-CV-1520, 2007 WL 119429, at *7, n.4 (N.D.N.Y. Jan. 10, 2007) (Homer, M.J.) (a superintendent's adoption of a recommendation by an investigating officer cannot by itself demonstrate that he failed to remedy misconduct) [citations omitted].  Similarly, Defendant Uhler (also a high-ranking official at Upstate C.F.) had a right to refer Plaintiff's complaint to his subordinate officer (Sergeant Sawyer), for investigation and report.

Moreover, Defendant Uhler's written response was prompt and adequate.  Specifically, that written response indicated as follows: (1) the day after Plaintiff sent his letter of complaint to Defendant Woods, Sergeant Sawyer initiated his investigation of Plaintiff's Complaint; (2) during that investigation, Sergeant Sawyer interviewed Plaintiff; (3) during the investigation, Sergeant Sawyer reviewed the available documentation concerning the incident, which indicated that Plaintiff had been examined by medical staff on the date of the incident; (4) Sergeant Sawyer informed Plaintiff to employ sick-call procedures for any further medical issues; (5) Defendant

32

Uhler concluded that, based on Sergeant Sawyer's report, and the available documentation

concerning the incident, there was no mistreatment of Plaintiff by staff members; and (6)

Defendant Uhler communicated this conclusion, and his rationale for the conclusion, in writing

to Plaintiff three days after Plaintiff sent his letter of complaint to Defendants Woods.  (Dkt. No.

60, Part 1, at 10-11 [Exs. A and A-1 to Plf.'s Decl. in Opp.].)

 Despite arguing that his theory of personal involvement by these two Defendants is based

"entirely" on the above two documents, Plaintiff goes on to argue that Defendant Woods was

personally involved in the constitutional violations alleged also because he "was aware of

Plaintiff's grievances concerning the use of excessive force and denial of medical treatment."

(Dkt. No. 60, Part 2, at 9 [Plf.'s Opp. Memo. of Law].)  The sole record documentation

concerning these grievances (Grievance Nos. "UST- 21438-04" and "UST-21508-04") are

attached at Exhibit B to Plaintiff's Declaration in Opposition to Defendants' motion.  (Dkt. No.

60, Part 1, at 13-16 [Exs. B through B-3 to Plf.'s Decl. in Opp.].)

 Again, these documents, which number four pages in length, do not constitute sufficient

evidence to create a genuine issue of material fact as to whether Defendant Woods was

personally involved in the constitutional violations alleged.  The first grievance (Grievance No.

"UST- 21438-04") was not even filed until October 21, 2004–at least three days after Defendant

Woods had referred Plaintiff's letter of complaint to his subordinate, Defendant Uhler, for

investigation and report, and the very same day that Defendant Uhler issued his written response

to Plaintiff's letter of complaint to Defendant Woods.  (Dkt. No. 60, Part 1, at 15 [Ex. B-2 to

Plf.'s Decl. in Opp.].)  Furthermore, the second grievance (Grievance No. "UST-21508-04") was

not filed until October 28, 2004–a week after Defendant Wood's subordinate, Defendant Uhler,

had issued his written response to Plaintiff's letter of complaint to Defendant Woods.  (Dkt. No. 60, Part 1, at 14 [Ex. B-3 to Plf.'s Decl. in Opp.].)  Thus, it would be implausible, if not wholly irrational, to conclude that the filing of Plaintiff's grievances (on October 21, 2004, and October 28, 2004) somehow increased Defendant Woods' duty as to how to respond to Plaintiff's letter complaint of October 18, 2004.

Furthermore, to the extent that Plaintiff is arguing that Defendant Woods was personally involved in the constitutional violations alleged by affirming the Inmate Grievance Program's denials of Plaintiff's two grievances, I reject that argument as well.  No record evidence exists that Defendant Woods failed to decide Plaintiff's grievance appeals in a timely and procedurally proper manner.  (Dkt. No. 60, Part 1, at 15-16 [Exs. B-2 and B-3 to Plf.'s Decl. in Opp.].)  Furthermore, no record evidence exists that Defendant Woods' administrative decisions were subsequently reversed on an appeal to DOCS' Central Office Review Committee.  Simply stated, the two grievance appeals presented to Defendants Woods were not sufficient to place him on notice that any constitutional violation had actually occurred.  Moreover, his response to those grievance appeals was, under the circumstances, entirely adequate and in no way demonstrative of any recklessness on his part.

For all of these reasons, I recommend that Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities be dismissed *with prejudice* because Plaintiff has failed to adduce sufficient record evidence to establish the requisite personal involvement of those four Defendants in the constitutional violations alleged.

34

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for partial summary judgment (Dkt. No. 58) be **GRANTED**, and that, as a result, (1) Plaintiff's claims against the four "John Doe" Defendants be dismissed without prejudice, (2) Plaintiff's official-capacity claims, and his Fourteenth Amendment claims, against the remaining Defendants be dismissed *with prejudice*, and (3) Plaintiff's Eighth Amendment claims against Defendants Quinn, Clark, Uhler and Robert Woods in their individual capacities be dismissed *with prejudice*.[47]

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), Local Rule 72.1(c), and Fed. R. Civ. P. 6(a)(2), the parties have **TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS** (*see* Fed. R. Civ. P. 6[d]), from the date of this Report-Recommendation, within which to file objections to this Report-Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court.  **FAILURE TO FILE TIMELY OBJECTIONS TO THIS REPORT-RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 21, 2008
      Syracuse, New York

_____
George H. Lowe
United States Magistrate Judge

---

[47]    As indicated above in note 1 of this Report-Recommendation, the claims that would remain in this action, should the Court adopt this Report-Recommendation, would be (1) Plaintiff's Eighth Amendment excessive-force claims against Defendants Trombly, Brown, Lavigne, Colby, Crossman, McGraw, Russell, and Donald Wood, and (2) Plaintiff's Eighth Amendment deliberate-indifference claims against Defendants Waterson and Chesboro.  (Dkt. No. 58, Part 3, at 8 [Defs.' Memo. of Law].)